## Case No. 5,034.

### The FRANCIS.

[1 Gall. 614.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1813.[2]

Crapo & Searle, for claimant.
Burrill & Robbins, for captors.

STORY, Circuit Justice (after reciting the facts). Upon the foregoing facts, and the presumption that Mr. Gillespie's return to the United States is with a bonâ fide intention of permanent residence, the case seems entitled to a very indulgent consideration. My duty, however, requires me to apply the rules of law, and though I may lament individual hardships, I am not permitted to relax general principles in favor of them. And I take it to be clear, that the facts of this case establish the position, that Mr. Gillespie, at the time of this shipment and capture, was a merchant domiciled in Great Britain, and of course affected with its national character. He was settled there with a house of trade, and for purposes of indefinite extent and duration. Had the facts been equivocal, the circumstance, that it was his native country, would undoubtedly have been entitled to great weight, in deciding the question of domicil; for, as Sir William Scott justly observes, the native character easily reverts, and it requires fewer circumstances to constitute domicil, in case of a native subject, than to impress the national character on one, who is originally of another country. The La Virginie, 5 C. Rob. Adm. 98. Such then being the domicil and national character of Mr. Gillespie, he must,

---

[4] See Act 22d July, 1813, c. 14 [3 Stat. 19], respecting suits and costs in United States courts.

[1] [Reported by John Gallison, Esq.]

[2] [Affirmed in 8 Cranch (12 U. S.) 363.]

according to the settled rules of public law, be deemed to partake of the advantages and the hazards of a British merchant, in peace and in war. For all commercial purposes, it is quite immaterial, what is the native or adopted country of a party. He is deemed a merchant of that country, where he resides, and carries on trade. The Indian Chief, 3 C. Rob. Adm. 12. Under such circumstances, Mr. Gillespie must be held, so far as the present transaction applies, to be completely invested with the hostile character of a British merchant.

But it is argued, that Mr. Gillespie, having become a naturalized citizen of the United States, could not be deemed an enemy merchant, unless he continued voluntarily to reside in Scotland after a full knowledge of the war, and that, as he had no such knowledge at the time of the shipment, he is entitled to all the benefits of his American character. I should have been glad to have seen an authority, which distinctly countenanced this exception. No such authority has been produced, and as the general rule is so often and so forcibly laid down in elementary works, it is difficult to conceive, that so important an exception, if it existed, should not have attracted public notice.

It is certainly true, that a character acquired by residence, ceases with the discontinuance of that residence. And, therefore, if a party, who has resided in an enemy country, puts himself in itinere to return to his native country, wtih an intention of bonâ fide residence there, he is deemed already to have resumed his native character, although he has not actually arrived in such country. The Indian Chief [supra]. But, until he has actually so put himself in itinere the character of the country, where he resides, attaches indissolubly to him. He takes it with all its benefits and all its disadvantages. Undoubtedly, cases of hardship often arise on the breaking out of hostilities, as to native citizens, who are domiciled as merchants in the enemy country. The hardship is often forcibly pressed upon the prize court; but, as Sir William Scott observes, that the interest of friends may sometimes be involved in our vengeance upon enemies, is a matter, which it is natural to regret, but impossible to avoid. The administration of public rules admits of no private exceptions: he who clings to the profits of a hostile connexion must be content to bear its losses also. The Phoenix, 5 C. Rob. Adm. 21.

As to citizens domiciled in the enemy country, I hold it to be the established rule, that if they wish to avoid the hostile character, they must actually remove before the breaking out of hostilities. Otherwise their property then afloat will be liable to confiscation. If they do not so remove, the character of the country is completely impressed upon their property, wherever it is found, and remains until they have abandoned their residence, and then, as to all future transactions, the character of their native or adopted country returns. It is said, that there is no authority, which pointedly decides this doctrine. But it seems to me, that Dr. Robinson's note to The Ocean, 5 C. Rob. Adm. 91, fully shows the understanding of the prize courts on the subject; and the case of The Osprey, before the lords commissioners in 1795, cited in The Vigilantia, 1 C. Rob. Adm. 1, is a strong instance of its application to a neutral subject. There can be no well founded distinction in this respect between a neutral and a citizen. But independently of all authority, it seems to me that the principle obviously flows from the general rule, as to the effect of domicil, and cannot form an exception without shaking its foundations.

In the present case, if the doctrine of the claimant's counsel be true, Mr. Gillespie's property at the time of the capture, was completely protected from capture by British and American cruisers. He was certainly entitled to protection, as a British merchant domiciled in Scotland; and upon the argument of the counsel, as an American merchant also. I should have been glad to have learned, how this double character, this hostile and amicable character, could coalesce in the same person, as to the same transaction. I imagine it would be a novus hospes in the prize jurisdiction.

On the whole, I deem Mr. Gillespie, as to this shipment, an enemy merchant, and therefore reject his claim, and condemn the property as lawful prize to the captors.